# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICHAEL MOOTRY,                                    CASE NO. 1:09-cv-01252-LJO-BAM PC

                  Plaintiff,         FINDINGS AND RECOMMENDATIONS
                                                   RECOMMENDING GRANTING
     v.                                            DEFENDANTS' MOTION TO DISMISS

E. G. FLORES, et al.,                              (ECF Nos. 32, 36, 40)

              Defendants.           OBJECTIONS DUE WITHIN THIRTY DAYS

_____/

## I.    Background

Plaintiff Michael Mootry ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, filed this action on July 20, 2009. This action is proceeding on the first amended complaint, filed May 24, 2010, against Defendants Flores, Hedgpeth, Billings, Tarnoff, Lewis, Grissom, Wegman, and Cabrerra for interfering with Plaintiff's exercise of his religious beliefs in violation of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  On June 10, 2011, Defendants Cabrera, Flores, Grissom, Hedgpeth, Lewis , Tarnoff, and Wegman filed a motion to dismiss.  Plaintiff filed an opposition on July 29, 2011, and Defendants filed a reply on September 6, 2011.  On October 31, 2011, following the issuance of an order for the United States Marshal to re-serve the complaint and summons, Defendant Billings waiver of service was returned executed.

## II.    Complaint Allegations

Plaintiff brings this action against Defendants Flores, Hedgpeth, Billings, Tarnoff, Lewis,

1

Grissom, Wegman, and Cabrera seeking declaratory and injunctive relief, and compensatory and punitive damages.  Plaintiff, a devout and practicing Muslim, arrived at Kern Valley State Prison ("KVSP") in June of 2006.  On March 2008, Plaintiff filed an inmate appeal alleging that his rights to exercise his religion were being violated.  The appeal was screened out by Defendant Billings stating that it was a request for information, not an appeal.  Plaintiff appealed the rejection and Defendant Billings again screened out his appeal for the same reason.

Plaintiff objected stating that Defendant Billings was attempting to keep him from exhausting his appeal and mailed the form to the Inmate Appeals Branch for Director's Level review.  The appeal was returned stating it appeared that it may have been improperly rejected.  On August 4, 2008, Plaintiff was asked by Defendant Tarnoff to resubmit the appeal, which he did.

Defendant Wegman interviewed Plaintiff on September 23, 2008, for the first level response. Defendant Cabrera was also present.  Defendant Wegman partially granted Plaintiff's appeal stating that KVSP does not allow Muslim inmates to attend Jumu'ah prayer services due to the lack of a Muslim chaplain or volunteers.  Although services are scheduled for Friday, they are never held. Defendants Grissom and Wegman signed off on the appeal.[1]  Plaintiff received a second level response from Defendant Lewis on December 5, 2008.  The response stated that Defendant Tarnoff had been assigned to investigate the appeal and a thorough investigation had been conducted. Defendant Cabrera had informed Defendant Tarnoff that outside volunteers are available to conduct services, and a Jewish chaplain had been hired, but he does not work on Fridays due to religious reasons.  Defendant Cabrera further indicated that volunteer religious personnel conduct services when they are available.  Defendant Lewis indicated that KVSP was in the process of hiring additional religious personnel.

On December 28, 2008, Plaintiff filed his Director's Level appeal.  The appeal was denied on March 9, 2009, stating that KVSP only employed one full-time chaplain making it difficult to meet the needs of the various religious groups and that interviews to fill the vacant chaplain position

---

[1] Contrary to Plaintiff's allegations, the appeal response stated "You are not being denied services, currently Kern Valley State Prison (KVSP) does not have a Muslim Chaplain however, KVSP does have Jumuah services scheduled for Fridays at 12:00 pm on A yard chapel."  (First Am. Compl., Attach. H, ECF No. 19.)

had been completed and hiring was anticipated. Volunteers had been providing coverage, but had been discontinued for personal reasons.

Plaintiff alleges that Defendants intentionally participated in the delay in hiring a Muslim chaplain and refused to allow reasonable accommodation of an inmate minister out of prejudice against Muslims. KVSP fired the previous Muslim chaplain in October 2007, and he filed a civil lawsuit alleging discrimination and retaliation. A Muslim chaplain was not provided until April 2009. During the time inmates were without a Muslim chaplain Jumu'ah, Ta'alim, and Ramadan services were sometimes allowed with supervision.

By March 2008, Defendant Flores, head of religious programing on the yard, and Defendant Hedgpeth, had completely disallowed all Muslim religious services and no longer allowed Muslim inmates to receive prayer oil. After inmates appealed, Defendants Hedgpeth and Flores had Christian chaplains or volunteers conduct services. These volunteers discontinued their services after prison guards, under the direction of Defendant Cabrera, began intentionally delaying services by not allowing Muslim inmates go to the chapel. The services would overlap making it difficult for the Christian chaplains to conduct their own services. The volunteers discontinued their services.

Around the time Plaintiff filed his initial appeal a Jewish chaplain was hired to minister to the Jewish inmates and Muslim population, although a majority of inmates were Muslim. Plaintiff's request for the reasonable accommodation of an inmate minister was ignored. From 2006 until March 2008, an inmate minister was allowed to conduct Muslim services in the absence of a chaplain and volunteers. During the thirty days of Ramadan unsupervised services were allowed to be conducted for two hours by an inmate minister, and on June 6, 2008, an inmate minister was allowed to conduct Jumu'ah services.

During this time period inmates were allowed to vote for and be represented by the Mens Advisory Counsel. Muslim inmates were the only class of people to be excluded from the right to be represented by an appointed minister.

**III.   Motion to Dismiss Legal Standard**

In considering a motion to dismiss for failure to state a claim, the court generally considers only the pleadings and must accept as true the allegations in the complaint. Marder v. Lopez, 450

1   F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund, 332

2   F.3d 1198, 1201, 1203 (9th Cir. 2002).  A court may consider evidence that the complaint relies on,

3   where the complaint refers to a document that is central to the complaint and no party questions the

4   authenticity of the document.  Marder, 450 F.3d at 448; see United States v. Ritchie, 342 F.3d 903,

5   908 (9th Cir. 2003).  Additionally, the court is to "construe the pleading in the light most favorable

6   to the party opposing the motion, and resolve all doubts in the pleader's favor.  Hebbe v. Pliler, 627

7   F.3d 338, 340 (9th Cir. 2010).  Pro se pleadings are held to a less stringent standard than those

8   drafted by attorneys.  Hebbe, 627 F.3d at 342.

9          A motion to dismiss for failure to state a claim is properly granted where the complaint lacks

10  "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."

11  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v. Pacifica

12  Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).  There are two requirements to survive a motion

13  to dismiss for failure to state a claim under Rule 12(b)(6).  While accepting factual allegations in the

14  complaint as true, the court is not required to accept legal conclusions as true, and the factual

15  allegations must state a plausible claim for relief.  Maya v. Centex Corp., __ F.3d __, WL 4381864,

16  *3 (9th Cir. 2011).

17  **IV.    Argument**

18         **A.    Defendants' Motion to Dismiss**

19         Defendants bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on

20  the grounds that 1) Plaintiff cannot recover damages or injunctive relief under RLUIPA; 2) Plaintiff

21  failed to state facts demonstrating that Defendants Tarnoff, Lewis, Grissom, Wegman, or Cabrera

22  participated in conduct that deprived Plaintiff of his rights under RLUIPA or the U. S. Constitution;

23  3) Plaintiff failed to state facts to demonstrate that Defendants discriminated against Plaintiff in

24  violation of the Equal Protection Clause; and 4) Defendants are entitled to qualified immunity

25  because they violated no constitutional or statutory right and their conduct was reasonable.

26         Defendants argue that Plaintiff may not bring suit against Defendants seeking damages under

27  RLUIPA.  Although the Ninth Circuit has not addressed the issue of whether a RLUIPA claim can

28  be brought against a defendant in his individual capacity, courts that have considered the issue have

1  not permitted suits against individuals in their individual capacities under RLUIPA and district
2  courts in the Ninth Circuit have generally adopted the same reasoning to conclude the RLUIPA does
3  not create a cause of action for monetary damages.

4          Plaintiff has been transferred to Salinas Valley State Prison ("SVSP") and has not alleged
5  that his rights are being violated by officials at SVSP.  Once an inmate transfers to a different
6  institution his claims for injunctive relief become moot because any dispute or controversy regarding
7  his conditions of confinement have been extinguished.  Plaintiff's claims for injunctive relief are
8  moot as Plaintiff is no longer incarcerated at KVSP.

9          Plaintiff brings this action against Defendants Tarnoff, Lewis, Grissom, Wegman, and
10  Cabrera for their involvement in adjudicating his administrative appeals.  Plaintiff fails to state any
11  facts that show these defendants personally participated in the imposition of any restrictions that
12  interfered with his ability to practice his religion.  Additionally, Plaintiff's claims against Defendant
13  Cabrera are based upon supervisory liability, which is not actionable under section 1983.

14          Plaintiff's complaint fails to state facts to show that Defendants' acted with a discriminatory
15  motive.  Plaintiff suggests that KVSP intentionally delay hiring a Muslim Chaplain and delayed
16  services to frustrate Christian volunteers.  The allegations in the complaint demonstrate that KVSP
17  officials took reasonable measures to ensure that Muslim inmates had an opportunity to practice their
18  faith.

19          Finally, Defendants argue that they are entitled to qualified immunity.  Defendants Tarnoff,
20  Lewis, Grissom, Wegman and Cabrera did not violate Plaintiff's rights under RLUIPA or the U. S.
21  Constitution.  Additionally, Defendants conduct was reasonable under the circumstances presented
22  in the complaint.  Defendants did not have any authority or duty to act beyond their roles in
23  adjudicating Plaintiff's administrative appeals.

24      **B.      Plaintiff's Opposition**

25          Plaintiff opposes the motion arguing that punitive damages can be obtained under RLUIPA
26  and the First and Fourteenth Amendments.  Plaintiff argues that he was denied his rights to practice
27  his sincerely held religious beliefs by Defendants' policy of an outright ban on inmate ministers
28  which resulted in Plaintiff being denied Jumu'ah services.  Title 15 of the California Code of

Regulations allows for an inmate to minister to the religious needs of a specific faith when a chaplain cannot be obtained to conduct services.  Defendants refused to follow the law and Plaintiff was denied his right to practice his religion.

Plaintiff argues that Defendant Cabrera maintained an underground anti-Muslim policy. Defendant Cabrera or his subordinates would act to prevent Muslim inmates from attending religious services.

Plaintiff submitted grievances complaining that the lack of a Muslim chaplain was depriving him of the right to practice his religion by attending Jumu'ah services.  Defendants Wegman and Lewis denied his appeals.  Defendant Hedgpeth is liable because he promulgated a policy that prevented Plaintiff from exercising his right to attend Jumu'ah services.  Defendant Flores enforced the illegal policy.  Defendant Cabrera participated in and promulgated an underground policy of discrimination and he and his subordinates violated Plaintiff's right to free exercise.  Defendants Tarnoff and Grissom neglected their duty to properly investigate Plaintiff's inmate appeals.

Plaintiff argues that the ban on inmate ministers violates his equal protection rights. Defendants did not hire a chaplain for over a year and the Muslim population suffered from the lack of a minister.  Plaintiff states that the mens advisory counsel continued to be lead by their representatives appointed by the inmates, but Muslim inmates were not allowed the same rights. Members of other religions had access to inmate ministers and chaplains.  Muslim inmate needs could not be accommodated without the hiring of a Muslim minister or appointing an inmate minister.

The failure to provide an inmate minister or chaplain substantially burdened Plaintiff's right to exercise his religion for well over a year.  Due to the blanket policy banning inmate ministers prevented Plaintiff from being led by a Muslim in accord with the Qur'an.

Plaintiff argues that Defendants are not entitled to qualified immunity because he has produced cognizable claims that his rights were violated and Defendants violated clearly established law.  Courts have allowed damages in cases involving violations of RLUIPA.  Plaintiff may receive monetary and punitive damages based upon the constitutional violations and RLUIPA.

///

1    ### C.    **Defendants' Reply**

2    Defendants argue that Plaintiff has failed to produce any facts or authority to defeat the

3    motion to dismiss.  The cases Plaintiff argues allow damages under RLUIPA neither affirmatively

4    rejected or addressed the reasons for barring damages under RLUIPA.  The majority of courts that

5    have considered the question have found that damages are not available under RLUIPA because the

6    intent to create such an action was not expressly intended by Congress as a condition of receiving

7    federal funds.

8    Plaintiff did not address the issue that his request for injunctive relief is moot as he is no

9    longer housed at KVSP, nor does Plaintiff state facts to show that Defendants Tarnoff, Lewis,

10   Grissom, or Wegman were involved in Plaintiff's attempts to obtain Jumu'ah services or an inmate

11   minister beyond processing his appeals.  Plaintiff has failed to state any facts to show that groups

12   other than Muslims were allowed to gather in the chapel without supervision, nor that the failure to

13   hire a Muslim minister was for the purpose of preventing Muslim inmates from gathering for

14   services or other activities.

15   While Plaintiff argues that Defendants failed to comply with Title 15 regulations, a violation

16   of regulations does not give rise to an action under section 1983.  Plaintiff has failed to state facts

17   that the regulation at issue was discriminatory against Muslims.  The plain language of the policy

18   states that unsupervised religious services or other activities in the chapel are forbidden for all

19   religious groups.  Additionally, the regulation cited by Plaintiff merely states that prison officials

20   "may at their discretion" appoint an inmate minister to attend to the religious needs of inmates.

21   Finally, Plaintiff has failed to allege any facts to show that Defendants Tarnoff, Lewis,

22   Grissom, or Wegman violated his rights under RLUIPA or the Constitution.

23   ## V.   **Discussion**

24   ### A.    **RLUIPA**

25   Defendants argue that Plaintiff may not seek damages under RLUIPA and his claims for

26   injunctive relief are moot, therefore Plaintiff's RLUIPA claim should be dismissed.  To state a claim

27   under RLUIPA a plaintiff must show that a person acting under color of state law "imposed a

28   substantial burden on his religious exercise.  Florer v. Congregation Pidyon Shevuyim, N.A., 639

F.3d 916, 921 (9th Cir. 2011).  Under RLUIPA a plaintiff bears the initial burden of setting forth a prima facie claim that there is a substantial burden on the exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005.)  Once the initial burden is met then the burden shifts to defendant to show that any substantial burden on plaintiff's "exercise of his religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Warsoldier, 418 F.3d at 995 (quoting 42 U.S.C § 2000cc-1(a); § 2000cc-2(b)).  RLUIPA is to be broadly construed in favor of protecting the inmates right to exercise his religious beliefs. Warsoldier, 418 F.3d at 995.

The first step is to identify the religious exercise that is being affected and then determine if the policy at issue is a substantial burden on that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).  RLUIPA defines "religious exercise" as "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C § 2000cc-5(7)(A). Plaintiff alleges that although the prison had services scheduled every Friday, he was denied Jumu'ah services because there was no chaplain or volunteer available to conduct services and the prison would not allow an inmate minister to conduct services.  To violate RLUIPA Plaintiff must show that the denial of services placed a substantial burden on his right to exercise his religion.  "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Warsoldier, 481 F.3d at 995 (quoting Thomas v. Review Bd. Of the Ind. Employment Sec. Div., 450 U.S. 707, 717-18, 101 S. Ct. 1425 (1981)).  An outright ban of a religious exercise has been held to place a substantial burden on an inmates right to exercise his religious beliefs. Greene, 513 F.3d at 988. While Plaintiff alleges that he was completely denied access to religious services after March of 2008, he also states that Jumu'ah, Ta'alim, and Ramadan services were sometimes allowed with supervision and services were held in June 2008 and from August through September 2008 for Ramadan.  Therefore, Plaintiff's complaint fails to show that there was a substantial burden on his right to exercise his religious beliefs.

Pursuant to 42 U.S.C. § 2000cc-2(a) an individual may assert a claim under RLUIPA "and obtain appropriate relief against a government."  The Eleventh Amendment bars a suit for damages under RLUIPA against defendants in their official capacity. Sossamon v. Texas, __ U.S. __, 131 S.

1  Ct. 1651, 1655 (2011); Holley v. California Dep't of Corrections, 599 F.3d 1108, 1114 (9th Cir.

2  2010). The Ninth Circuit has not ruled on whether RLUIPA provides an action for damages against

3  prison officials in individual capacity suits. Florer, 639 F.3d at 922 n.3. However the Fifth, Seventh,

4  and Eleventh Circuits have concluded that Congress enacted RLUIPA pursuant to the Spending

5  Clause and did not indicate with sufficient clarity an intent to create an individual capacity action

6  for damages, moreover, such a reading of the statute would raise serious constitutional concerns

7  regarding the extent of Congress' authority under the Spending Clause. See Sossamon v. Lone Star

8  State of Texas, 560 F.3d 316, 329 (5th Cir. 2009) (Congressional enactments pursuant to the

9  spending clause do not impose direct liability on an individual who is not a party to the contract

10 between the state and federal government); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009)

11 ("Construing RLUIPA to provide for damages actions against officials in their individual capacities

12 would raise serious questions regarding whether Congress had exceeded its authority under the

13 Spending Clause"); Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007) ("[S]ection 3 of RLUIPA-a

14 provision that derives from Congress' Spending Power-cannot be construed as creating a private

15 action against individual defendants for monetary damages"), abrogated on other grounds,

16 Sossamon, __ U.S. ___, 131 S. Ct. 1651. The Fourth Circuit has also held that no individual

17 capacity claim can be brought under RLUIPA. Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir.

18 2009) ("[I]t would be a novel use of the spending clause to condition the receipt of federal funds on

19 the creation of an individual capacity damages action").

20        The Ninth Circuit has found that RLUIPA is constitutional as an enactment under the

21 Spending Clause. Mayweathers v. Newland, 314 F.3d 1062, 1066 (9th Cir. 2002). Implicit in the

22 Ninth Circuit's holding is recognition of limits on Congress' authority under the Spending Clause.

23 Thus, the Court finds the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits persuasive

24 and concludes that RLUIPA does not create a suit for damages against defendants in their individual

25 capacities. See also Williams v. Book, No.2:10-cv-0423, 2011 WL 2173743, *2 n.2 (E.D. Cal. June

26 2, 2011); Rupe v. Cate, 688 F.Supp.2d 1035, 1045 (E.D. Cal. Feb. 1, 2010); Hypolite v. CDCR, No.

27 2:05-cv-0428, 2010 WL 1729736, *5 (E.D. Cal. Apr. 28, 2010). Accordingly, Plaintiff may not

28 recover damages against defendants in their individual or official capacities under RLUIPA and may

1 | only seek injunctive relief.

2 |  Plaintiff seeks injunctive relief to be allowed to attend Jumu'ah prayer and for an inmate
3 | minister to be allowed to conduct Jumu'ah services in the absence of a Muslim chaplain or
4 | volunteers.  When an inmate seeks injunctive or declaratory relief concerning the prison where he
5 | is incarcerated, his claims for such relief become moot when he is no longer subjected to those
6 | conditions.  Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368
7 | (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  The incidents alleged in the
8 | complaint occurred while Plaintiff was housed at KVSP.  On August 10, 2010, Plaintiff submitted
9 | a change of address form indicating that he is now housed at SVSP.  Since Plaintiff is no longer
10 | incarcerated at KVSP the injunctive relief he is seeking is moot.

11 |  Plaintiff also seeks a declaration that his rights were violated.  "A declaratory judgment, like
12 | other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised
13 | in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S. Ct.
14 | 641, 644 (1948).  "Especially where government action is involved, courts should not intervene
15 | unless the need for equitable relief is clear, not remote or speculative."  Id.  "Declaratory relief
16 | should be denied when it will neither serve a useful purpose in clarifying and settling the legal
17 | relations in issue nor terminate the proceedings and afford relief from the uncertainty and
18 | controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir.
19 | 1985).  Defendants in this action have no control over the policies at SVSP and Plaintiff has not
20 | demonstrated a reasonable expectation that he would be transferred back to KVSP.  Therefore
21 | Plaintiff's request for a declaratory judgment is moot.  Since Plaintiff is not entitled to relief under
22 | RLUIPA, as discussed above, the Court should grant Defendants' motion to dismiss Plaintiff's
23 | RLUIPA claim.

24 |  **B.** **Free Exercise**

25 |  "Prison walls do not form a barrier separating prison inmates from the protections of the
26 | Constitution."  Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987).  Nevertheless,
27 | prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow
28 | prison officials to achieve legitimate correctional goals and maintain institutional security.  O'Lone

1  v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); Bell v. Wolfish, 441 U.S.
2  520, 546-47, 99 S. Ct. 1861, 1878 (1979).

3       "Inmates . . . retain protections afforded by the First Amendment, including its directive that
4  no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348,
5  107 S. Ct. 2400, 2404 (1987) (internal quotations and citations omitted).  The protections of the Free
6  Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's
7  religion by preventing him from engaging in conduct which he sincerely believes is consistent with
8  his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732,
9  737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

10      While Plaintiff complains that he was unable to participate in Jumu'ah services, he fails to
11  allege that attending Jumu'ah services was a sincerely held religious belief. Shakur, 514 F.3d at 884.
12  Additionally, while Plaintiff alleges that he was denied the ability to participate in Jumu'ah services,
13  he fails to demonstrate that he was denied access to other Muslim services or religious ceremonies.
14  O'Lone, 482 U.S. at 352, 107 S. Ct. at 2406.  The Court notes that services were provided for
15  Ramadan and occasionally when volunteers were available.  Plaintiff has failed to state a cognizable
16  claim under the Free Exercise Clause of the First Amendment.

17      **C.    Equal Protection Clause**

18      The Equal Protection Clause requires that all persons who are similarly situated should be
19  treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne
20  Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  An equal protection claim may be
21  established by showing that the defendant intentionally discriminated against the plaintiff based on
22  the plaintiff's membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d
23  1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without
24  a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158,
25  1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000).

26      Plaintiff does not set forth factual allegations that he is a member of a protected class.  The
27  allegation that Muslim inmates were not allowed to have a inmate minister while inmate
28  representatives were allowed to represent inmates on the Mens Advisory Counsel does not state a

1    cognizable claim.  All inmates are not similarly situated to Muslim inmates.  Plaintiff may not state

2    a claim based upon Muslim inmates being treated differently than all inmates in the prison who are

3    not similarly situated.  Thornton, 425 F.3d at 1168.  Plaintiff fails to allege any facts supporting a

4    claim that he was intentionally discriminated against or that other similarly situated inmates were

5    treated differently.

6        **D.    Qualified Immunity**

7        Defendants argue that they are entitled to qualified immunity because their actions were

8    reasonable under the circumstances.  The doctrine of qualified immunity protects government

9    officials from civil liability where "their conduct does not violate clearly established statutory or

10   constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555

11   U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.

12   Ct. 2727, 2738 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who

13   knowingly violate the law."  Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2085 (2011) (citations

14   omitted).  To determine if an official is entitled to qualified immunity the court uses a two part

15   inquiry.  Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001) overruled in part by "

16   Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808.  The court determines if the facts as alleged state

17   a violation of a constitutional right and if the right is clearly established so that a reasonable official

18   would have known that his conduct was unlawful.  Ashcroft, 131 S. Ct. at 2083.  This does not

19   require that the same factual situation must have been decided, but that existing precedent would

20   establish the statutory or constitutional question beyond debate.  Id.; Mattos v. Agarano, __ F.3d __,

21   2011 WL 4908374, *6 (9th Cir. 2011).  "The linchpin of qualified immunity is the reasonableness

22   of the official's conduct."  Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

23       The inquiry as to whether the right was clearly established is "solely a question of law for the

24   judge."  .  Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro.

25   Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).  A district court is "permitted to exercise their

26   sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

27   addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236,

28   129 S. Ct. at 818.

1    Since Plaintiff has failed to state a cognizable claim for a violation of his federal rights, there

2    has not been sufficient factual development for a determination of whether Defendants are entitled

3    to qualified immunity.  Defendants motion for qualified immunity should be denied.

4    **E.    Due Process**

5    In the amended complaint Plaintiff alleged a violation of due process that was not addressed

6    in the order issued on March 3, 2011.  The Due Process Clause protects against the deprivation of

7    liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393

8    (2005).  In order to state a cause of action for a deprivation of due process, a plaintiff must first

9    identify a liberty interest for which the protection is sought.  Id.  The Due Process Clause does not

10   confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence.

11   Sandin v. Conner, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298 (1995).  However, a state may "create

12   liberty interests which are protected by the Due Process Clause."  Sandin, 515 U.S. at 483-84, 115

13   S. Ct. at 2300.  A prisoner has a liberty interest protected by the Due Process Clause only where the

14   restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

15   of prison life."  Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at

16   484, 115 S. Ct. at 2300).

17   To the extent that Plaintiff attempts to state a due process claim based upon the processing

18   of his appeals, there is no liberty interest in a prison grievance procedure.  Mann v. Adams, 855 F.2d

19   639, 640 (9th Cir. 1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).  The prison

20   grievance procedure does not confer any substantive rights upon inmates and actions in reviewing

21   appeals cannot serve as a basis for liability under section 1983.  Buckley v. Barlow, 997 F.2d 494,

22   495 (8th Cir. 1993).

23   Finally, where a particular amendment provides an explicit textual source of constitutional

24   protection against a particular sort of government behavior, that Amendment, not the more

25   generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."

26   Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets

27   omitted) overruled on other grounds by Unitherm Food Systems, Inc. V. Swift –Eckrick, Inc., 546

28   U.S. 394, 126 S. Ct. 980 (2006); County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct.

1   1708, 1714 (1998).  In this case, the First Amendment "provides [the] explicit textual source of

2   constitutional protection . . . ."  Patel, 103 F.3d at 874.  Therefore, the First Amendment rather than

3   the Due Process Clause of the Fourteenth Amendment governs Plaintiff's claims.

4                   **F.       Linkage Requirement**

5           Because the Court finds that Plaintiff has failed to state a cognizable claim, it declines to

6   address Defendants arguments that Plaintiff has not sufficiently linked the named defendants to

7   conduct that violated Plaintiff's rights.  However, Plaintiff is advised that in determining whether

8   a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil

9   Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim

10  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule

11  8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned,

12  the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937,

13  1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

14          Under section 1983, Plaintiff must demonstrate that each defendant personally participated

15  in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires

16  the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S. Ct.

17  at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  "[A] complaint [that]

18  pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line

19  between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting

20  Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations

21  contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 129

22  S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere

23  conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

24  **VI.   Conclusion and Recommendation**

25          Accordingly, based on the foregoing, the Court  HEREBY RECOMMENDS that:

26          1.      Defendants' motion to dismiss, filed June 10, 2011, be GRANTED IN PART as

27                  follows:

28                  a.      Plaintiff's RLUIPA be dismissed, without leave to amend, as moot;

14

1              b.      Plaintiff's first amended complaint be dismissed, with leave to amend, for

2                   failure to state a claim; and

3      2.      Defendants' motion to dismiss to dismiss based upon qualified immunity be

4             DENIED, without prejudice.

5      These findings and recommendations will be submitted to the United States District Judge

6 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

7 days after being served with these findings and recommendations, Plaintiff may file written

8 objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

9 Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

10 specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

11 1153 (9th Cir. 1991).

12      IT IS SO ORDERED.

13 **Dated:**   <u>**November 16, 2011**</u>       <u>/s/ **Barbara A. McAuliffe**</u>

14                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28