# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOOTRY, | CASE NO. 1:09-cv-01252-LJO-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| E. G. FLORES, et al., | (ECF No. 60) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

## I.    Screening Requirement

Plaintiff Michael Mootry ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On December 20, 2011, an order issued adopting findings and recommendations, granting Defendants' motion to dismiss, and granting Plaintiff thirty days in which to file a second amended complaint. (ECF No. 50.) Following the grant of several motions for an extension of time, Plaintiff filed a second amended complaint on May 1, 2012.  (ECF No. 60.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

1

1   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

2   do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell

3   Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).

4         Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings

5   liberally construed and to have any doubt resolved in their favor, but the pleading standard is now

6   higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive

7   screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to

8   allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged,

9   Iqbal, 556 U.S. at , 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir.

10  2009).  The "sheer possibility that a has defendant acted unlawfully" is not sufficient, and "facts that

11  are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.

12  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Moss, 572 F.3d at 969.

13        Further, under section 1983, Plaintiff must demonstrate that each defendant personally

14  participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

15  Although a court must accept as true all factual allegations contained in a complaint, a court need

16  not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

17  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

18  do not suffice."  Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

19  **II.    Second Amended Complaint Allegations**

20        Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and

21  is incarcerated at California State Prison, Los Angeles County.  Plaintiff's claims in this action arose

22  out of his confinement at Kern Valley Staet Prison from June 2006 though July 2010.

23        Plaintiff alleges after a prison chaplain was let go for discriminatory and retaliatory purposes,

24  Muslim inmates were without a chaplain from October 2007 through April 2009. (Sec. Am. Compl.

25  3, ECF No. 60.)  In December 2007, Defendant Hedgpeth enforced a Department of Operations

26  policy that did not allow Muslim inmates to purchase or possess prayer oil and forbade inmate

27  ministers from leading inmate religious services without a chaplain or volunteer. (Id. at 3-4.) These

28  policies, which were implemented and enforced by Defendants Hedgpeth and Flores officially

abolished Jumu'ah prayer services in March 2008. Plaintiff filed an administrative appeal regarding the denial of Jumu'ah services and a Muslim chaplain or inmate minister on March 28, 2008. (Id. at 4.)

Plaintiff's appeal was improperly screened out several times by Defendant Billings as a request for an interview. (Id. at 4-5.) After prison officials were ordered to let his appeal proceed, Defendant Tarnoff ordered Plaintiff to resubmit his request on an inmate appeal form. On September 23, 2008, Defendant Wegman interviewed Plaintiff for the appeal and Defendant Cabrera was present. Defendant Wegman partially granted Plaintiff's appeal stating that Jumu'ah services are scheduled on Fridays at noon. (Id. at 6.)

Plaintiff responded that Jumu'ah services were not being conducted and Defendant Wegman did not address the issue of an inmate minister being allowed to conduct Jumu'ah services. (Id. at 6-7.) Defendant Lewis partially granted Plaintiff, appeal and informed Plaintiff that the prison only had a Jewish Rabbi, who did not work on Fridays due to his religious beliefs, that sometimes volunteers are available, and when it is determined that a chaplain cannot be obtained the prison will accommodate Plaintiff's religious needs. (Id. at 7.) Plaintiff's Director's Level appeal was denied stating that a Muslim chaplain should be hired in the near future, and the individuals that had been volunteering had discontinued for personal reasons. (Id. 8.)

Plaintiff alleges that Defendant Billings failed to process his administrative appeals for pretextual reasons in violation of the First Amendment. (Id. at 9-10.) Defendants Hegpeth, Flores, Wegman, Lewis, and Cabrera violated his rights under the Free Exercise Clause of the First Amendment by denying him access to Jumu'ah prayer services and a Muslim chaplain or inmate ministers. (Id. at 11-12.) Defendant Cabrera maintained an underground anti-Muslim policy because he would refuse to sign the sheet to allow Muslim inmates to the be released to attend Jumu'ah or Ta'aleem services and allowed officers under his authority to delay releasing Muslim inmates for services. (Id. at 14.) Instead of searching Muslim inmates when they exited their cells, Defendant Cabrera and other officers would sit around drinking soda and would ignore the inmates. On occasion, Defendant Cabrera would forbid Muslim services from being conducted, sometimes because the guards were celebrating a birthday or other event. (Id. at 15.)

Defendant Wegman did not address Plaintiff's grievance that the Jewish Rabbi did not work on Fridays, and therefore Jumu'ah services were not being conducted. (Id. at 17.) Defendant Lewis responded to Plaintiff's inmate appeal and failed to grant a reasonable accommodation when he had the authority to do so. (Id. at 20.)

Defendants Hegdpeth, Flores, Wegman, Lewis, and Cabrera violated Plaintiff's right to equal protection under the Fourteenth Amendment by failing to hire a Muslim Chaplain for well over a year. The Muslim inmates were not allowed to be lead by an inmate chaplain, while the Men's Advisory Counsel was allowed to be lead by inmate representatives. (Id. at 25.) Members of other faiths had access to chaplains, but Muslim inmates were denied this right because they were not allowed to have inmate chaplains. (Id. at 25.)

For the reasons set forth below, Plaintiff's second amended complaint states a claim against Defendants Hegdpeth, Flores, Wegman, Lewis, and Cabrera for violations of the Free Exercise Clause of the First Amendment, but fails to state any other claims for relief under section 1983.

**III.   Discussion**

 **A. Access to Courts**

Plaintiff alleges that Defendant Billings violated his right to file administrative grievances and redress the court under the First Amendment. Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To bring a claim, the plaintiff must have suffered an actual injury by being shut out of court. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351.

Plaintiff may not pursue a claim for denial of access to the courts based on the failure of staff to respond to his appeals or based on the rejection of his appeals by staff. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), and because Plaintiff has not alleged any facts demonstrating that he suffered an actual injury to qualifying litigation, his claim fails as a matter of law. Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 351.

1  Plaintiff fails to state a claim against Defendant Billings for violating his right of access under the
2  First Amendment.

3      **B.    Free Exercise[1]**

4      "Prison walls do not form a barrier separating prison inmates from the protections of the
5  Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987).  Nevertheless, prisoners' constitutional
6  rights are subject to substantial limitations and restrictions in order to allow prison officials to
7  achieve legitimate correctional goals and maintain institutional security.  O'Lone v. Estate of
8  Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 529, 546-47 (1979).

9      "Inmates . . . retain protections afforded by the First Amendment, including its directive that
10 no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348
11 (1987) (internal quotations and citations omitted).  The protections of the Free Exercise Clause are
12 triggered when prison officials substantially burden the practice of an inmate's religion by preventing
13 him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur v.
14 Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir.
15 1997), *overruled in part by* Shakur, 514 F.3d at 884-85.

16     Plaintiff fails to state a claim based upon the denial of prayer oil.  While Plaintiff claims that
17 Muslim inmates were not allowed to purchase and possess prayer oil, he fails to allege that
18 possessing prayer oil was a sincerely held belief consistent with his faith.

19     Prison officials do not need to provide an inmate with a chaplain of his faith, but need only
20 provide inmates with a reasonable opportunity to worship in accord with their sincerely held beliefs.
21 See McCollum v. California Dep't of Corrections and Rehabilitation, 647 F.3d 870, 879 (9th Cir.
22 2011) (*quoting* Cruz v. Beto, 405 U.S. 319, 322 n.2, 92 S. Ct. 1079 (1972)) ("[A] chaplain, priest,
23 or minister is not required to be provided without regard to the extent of the demand. But reasonable
24 opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the
25 First and Fourteenth Amendment without fear of penalty"); Johnson v. Moore, 948 F.2d 517, 520
26 (9th Cir. 1991) ("[T]he constitution does not necessarily require prisons to provide each inmate with

27

28      [1]In his first amended complaint, Plaintiff argues the Turner factors as they would apply to this action.  At
the pleading stage, the issue is whether Plaintiff has stated a claim and Plaintiff's legal argument is disregarded.

the spiritual counselor of his choice"); <u>Ward v. Walsh</u>, 1 F.3d 873, 880 (9th Cir. 1993) (prison officials are under no obligation to provide each inmate with a spiritual counselor of his choice). The Ninth Circuit has upheld regulations that ban inmate lead religious activity. <u>See</u> <u>Anderson v. Angelone</u>, 123 F.3d 1197, 1198-99 (9th Cir. 1997) (ban on inmate ministers is reasonably related to legitimate security concerns); <u>Jones v. Bradley</u>, 590 F.2d 294, 295 (9th Cir. 1979) (requiring prison chaplain or outside sponsor for inmate led meetings in chapel did not deny inmate reasonable opportunity to pursue his faith); <u>Allen v. Toombs</u>, 827 F.2d 563, 569 (9th Cir. 1987) (policy that provides for outside religious leaders to enter prison to address religious needs of inmates provides a reasonable opportunity for inmates to exercise their faith). Accordingly, Plaintiff's claim for denial of free exercise is based upon the alleged result of the failure to provide a Muslim or inmate chaplain, the denial of Jumu'ah services which Plaintiff alleges interfered with his ability to exercise a sincerely held religious belief.

### 1.    Defendants Hedgpeth and Flores

Plaintiff's claim that Defendants Hedgpeth and Flores implemented and enforced policies that abolished Jumu'ah prayer services states a cognizable claim for violation of the Free Exercise Clause of the First Amendment.

### 2.    Defendant Tarnoff

Plaintiff's allegation that, after his appeal was determined to be improperly screened out, Defendant Tarnoff ordered Plaintiff to resubmit the appeal on a new 602 form fails to state a cognizable claim. Plaintiff fails to allege any facts to support a claim that Defendant Tarnoff personally participated in the deprivation of his constitutional rights merely by informing Plaintiff that he needed to resubmit his inmate appeal. <u>Jones</u>, 297 F.3d at 934.

### 3.    Defendant Wegman

Plaintiff's claims that Defendant Wegman partially granted his grievance, while failing to address that Muslim inmates were being denied Jumu'ah prayer services is sufficient to state a claim for a violation of the Free Exercise Clause of the Eighth Amendment.

### 4.    Defendant Lewis

Plaintiff's allegation that Defendant Lewis partially granted Plaintiff's appeal, was aware that

Muslim inmates were being denied access to Jumu'ah services, and failed to act to correct the violation while having the authority to do so states a cognizable claim for a violation of the Free Exercise Clause of the First Amendment.

### 5. **Defendant Cabrera**

Plaintiff's claim that officers under Defendant Cabrera's authority would delay releasing Muslim inmates for services fails to state a cognizable claim. Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S. Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 1948.

Plaintiff's allegations that Defendant Cabrera would refuse to sign the sheet to allow inmates to be released to attend services, would intentionally refuse to search inmates so they could go into the chapel, and would cancel Jumu'ah services for no reason are sufficient to state a cognizable claim for violation of the Free Exercise Clause of the First Amendment.

### C. **Equal Protection**

Plaintiff alleges that his equal protection rights were violated by the failure to provide a chaplain or inmate ministers to Muslim inmates. The Equal Protection Clause requires that all persons who are similarly situated should be treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff claims that the policy refusing to allow inmate ministers was discriminatory because the Men's Advisory Counsel, a civil group, continued to be led by inmate representatives that were appointed by the whole class of inmates. However, as Plaintiff was previously advised, Muslim

1  inmates are not similarly situated to all inmates at the prison, nor is the Men's Advisory Counsel

2  similarly situated to Muslim inmates.  Plaintiff cannot state an equal protection claim based on the

3  failure to allow an inmate minister for Muslim inmates because the Men's Advisory Counsel was

4  led by inmate representatives.

5      Plaintiff states that his equal protection rights were violated because members of other faiths

6  had access to chaplains, but Plaintiff was denied access based upon the policies and actions of the

7  defendants.  It is somewhat unclear what access Plaintiff is alleging was granted to other religious

8  groups that was denied to Plaintiff.  While Plaintiff's complaint is to be liberally construed, the Court

9  is not required to accept as true allegations that contradict exhibits attached to the complaint or

10  matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

11  deductions of fact, or unreasonable inferences.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992

12  (9th Cir. 2010).

13     According to the complaint, during the time period in question, there was only a single

14  Jewish chaplain hired by the prison.  While Plaintiff claims to have been treated differently than

15  other religious groups, the Jewish inmates were the only inmates who were provided with a paid

16  chaplain of their faith.  Muslim inmates were not treated differently than religions other then those

17  of the Jewish faith.

18     Plaintiff also complains that Muslim inmates were denied an inmate chaplain.  The policy

19  states that "no inmate will be allowed to conduct or lead any religious services, classes or groups of

20  any kind in the facility chapels, without being under the direct supervision of a facility chaplain or

21  authorized volunteer."  (Sec. Am. Compl. 31, ECF No. 60.)  Plaintiff fails to allege that religions,

22  other than Muslims, were allowed to be led by inmate chaplains.

23     Finally, it is clear from the complaint that volunteers were allowed to lead services, however

24  the Muslim volunteers had stopped volunteering due to personal reasons.  Plaintiff fails to allege that

25  the lack of volunteers to lead Muslim services was due to the actions of any named defendant.

26  Plaintiff fails to set forth factual allegations to state a cognizable claim that Muslim inmates were

27  denied equal protection.

28  ///

1    **IV.    Conclusion and Recommendation**

2        The Court finds that Plaintiff's second amended complaint states a claim against Defendants

3    Hedgpeth, Flores, Wegman, Lewis, and Cabrera for violations of the Free Exercise Clause of the

4    First Amendment, but fails to state any other claims for relief under section 1983.  Because Plaintiff

5    has previously been notified of the deficiencies and given leave to amend, the Court recommends

6    that the non-cognizable claims be dismissed, with prejudice.  Noll v. Carlson, 809 F.2d 1446, 1448-

7    49 (9th Cir. 1987).  Based on the foregoing, it is HEREBY RECOMMENDED that:

8        1.    This action proceed on the second amended complaint, filed May 1, 2012, against

9              Defendants Hedgpeth, Flores, Wegman, Lewis, and Cabrera for violations of the Free

10             Exercise Clause of the First Amendment for the denial of Jumu'ah services;

11       2.    Defendants Billings and Tarnoff be dismissed from this action, with prejudice, for

12             Plaintiff's failure to state a claim under section 1983;

13       3.    Plaintiff's claims based upon denial of prayer oil and the failure to provide a Muslim

14             chaplain or inmate chaplain be dismissed, with prejudice, based upon Plaintiff's

15             failure to state a claim under section 1983; and

16       4.    Plaintiff's access to the court and equal protection claims be dismissed, with

17             prejudice, for Plaintiff's failure to state a claim.

18       These findings and recommendations will be submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

20   days after being served with these findings and recommendations, Plaintiff may file written

21   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

22   Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

23   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

24   1153 (9th Cir. 1991).

25       IT IS SO ORDERED.

26   **Dated:    May 15, 2012**            **/s/ Barbara A. McAuliffe**
                                           UNITED STATES MAGISTRATE JUDGE

27

28