# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOOTRY, | CASE NO. 1:09-cv-01252-LJO-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |
| v. | |
| E. G. FLORES, et al., | (ECF No. 64) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.  Background**

Plaintiff Michael Mootry ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 20, 2009. This action is proceeding on the second amended complaint, filed on May 1, 2012, against Defendants Hedgpeth, Flores, Wegman, Lewis and Cabrera for denial of Jumu'ah services in violation of the Free Exercise Clause of the First Amendment.

On July 5, 2012, Defendants Hedgpeth, Flores, Lewis and Wegman filed a motion to dismiss for failure to state a claim and for qualified immunity. Plaintiff did not file an opposition. The motion is deemed submitted. Local Rule 230(l).

**II.  Second Amended Complaint Allegations**

Plaintiff is a Muslim prisoner who was incarcerated at Kern Valley State Prison ("KVSP") from June 2006 through July 20, 2010. In December 2007, Defendant Hedgpeth enforced a KVSP Department of Operations Manual ("DOM") Supplement, which almost completely abolished the

1

Muslim inmates' rights and ability to practice their religion. Defendant Hedgpeth implemented a policy banning inmate ministers from leading religious services without the direct supervision of a hired chaplain or volunteer. From October 2007 until April 2009, KVSP Muslim inmates were not accommodated with a hired chaplain to supervise Jumu'ah prayer services.

In March 2008, Defendant E.G. Flores, active warden and head of religious programming on "A" yard at KVSP, officially abolished Jumu'ah prayer services for Muslims, including Plaintiff. Defendant Flores enforced the ban on inmate ministers. Prior to that time, inmate minister Earnest Granberry was permitted to lead the Muslims in services with only correctional guard supervision.

On March 28, 2008, Plaintiff filed an administrative appeal regarding denial of his rights to Jumu'ah prayer services and to a Muslim chaplain or inmate minister. The KVSP appeals coordinator improperly screened out his appeal.

On August 4, 2008, Plaintiff was ordered to resubmit his appeal on a new form. Plaintiff resubmitted his appeal on August 6, 2008. On September 28, 2008, Defendant Wegman interviewed Plaintiff. Defendant M. Cabrera was present during the interview.

Defendant Wegman partially granted Plaintiff's appeal at the first level, stating that Jumu'ah services were scheduled for Friday at noon. Plaintiff objected to the response on that grounds that Jumu'ah services were not being conducted and that Defendant Wegman evaded the issue of an inmate minister being allowed to conduct Jumu'ah services in the absence of a chaplain or volunteer.

On December 5, 2008, Defendant Lewis partially granted Plaintiff's appeal at the second level. Defendant Lewis admitted that KVSP only had a Jewish Rabbi to conduct services for Jumu'ah on Friday, but the Rabbi did not work on Fridays due to religious beliefs. Defendant Lewis stated that when it was determined that a chaplain could not be obtained, then KVSP would accommodate Plaintiff's spiritual needs.

On December 28, 2008, Plaintiff requested a Director's level review of his appeal. Plaintiff objected to Defendant Lewis' response because it evaded the fact that Jumu'ah services were still being denied him and the law regarding inmate ministers was not being adhered to. On March 9, 2009, N. Grannis provided a Director's level response, claiming she spoke to Defendant Wegman who told her that only one hired chaplain is employed at KVSP (the Jewish Rabbi) and that there

1  should be a Muslim chaplain hired in the near future.  Defendant Wegman also told her that
2  volunteers had discontinued volunteering for personal reasons. N. Grannis denied Plaintiff's appeal.

3  **III.   Motion to Dismiss Legal Standard**

4  In considering a motion to dismiss for failure to state a claim, the court generally considers
5  only the pleadings and must accept as true the allegations in the complaint.  Marder v. Lopez, 450
6  F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund, 332
7  F.3d 1198, 1201, 1203 (9th Cir. 2002).  A court may consider evidence that the complaint relies on,
8  where the complaint refers to a document that is central to the complaint and no party questions the
9  authenticity of the document.  Marder, 450 F.3d at 448; see United States v. Ritchie, 342 F.3d 903,
10 908 (9th Cir. 2003).  Additionally, the court is to "construe the pleading in the light most favorable
11 to the party opposing the motion, and resolve all doubts in the pleader's favor.  Hebbe v. Pliler, 627
12 F.3d 338, 340 (9th Cir. 2010).  Pro se pleadings are held to a less stringent standard than those
13 drafted by attorneys.  Hebbe, 627 F.3d at 342.

14 A motion to dismiss for failure to state a claim is properly granted where the complaint lacks
15 "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."
16 Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v. Pacifica
17 Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).  While accepting factual allegations in the
18 complaint as true, the court is not required to accept legal conclusions as true, and the factual
19 allegations must state a plausible claim for relief.  Maya v. Centex Corp., 658 F.3d 1060, 1067-68
20 (9th Cir. 2011).

21 **IV.  Argument**

22     **A.   Defendants' Motion to Dismiss**

23 Defendants contend that dismissal is appropriate because they had no direct or causal
24 connection to Plaintiff's claims aside from their involvement in the grievance process and they are
25 entitled to qualified immunity.

26     **B.   Discussion**

27         **1.    Free Exercise**

28 "Inmates . . . retain protections afforded by the First Amendment, including its directive that

no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85.

        a.      Defendants Hedgpeth and Flores

Defendants argue that Plaintiff cannot state a claim against Warden Hedgpeth and Active Warden Flores based on supervisory liability. "It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" Preschooler II v. Davis, 479 F.3d 1175, 1183 (9th Cir.2007) (citations omitted). A supervisor, such as the warden, may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc) (citation omitted), abrogated in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Indeed, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Redman. 942 F.2d at 1146 (citations omitted).

Here, Defendants assert that Plaintiff fails to allege facts showing that Warden Hedgpeth or Assistant Warden Flores were personally involved in any deprivation or that they implemented wrongful policies. As found in the court's prior order of service, a liberal reading of Plaintiff's complaint demonstrates that he properly states a cognizable claim against Defendants Hedgpeth and Flores for implementing and enforcing policies that essentially abolished Jumu'ah prayer services.

Defendants argue that Plaintiff has not alleged facts showing that Defendants knew or

reasonably should have known that the policy would cause a denial of Jumu'ah services. In so arguing, Defendants contend that the policy itself provides for a number of qualified individuals to supervise inmate religious activities and the prohibition on inmates leading religious services themselves exists only to the extent that inmates want to lead such services in the facility chapel without direct supervision of a facility Chaplain or Volunteer. Ex. A to Sec. Amend. Compl., DOM Supplement 101060.6.4., p. 4 ("No inmate will be authorized or allowed to conduct or lead any religious services, classes, or groups of any kind in the facility chapels, without being under the direct supervision of a facility chaplain or authorized volunteer.") Defendants' argument apparently overlooks Plaintiff's allegations that neither a Chaplain nor a volunteer were available to either lead or to supervise Jumu'ah services and that the policy was implemented generally to preclude inmates from leading Jumu'ah services. Sec. Amend. Compl. pp. 3-4.

Further, Defendants contend that Plaintiff alleges no facts showing that Defendant Flores was aware of any deprivation occurring or personally took any action to deny Plaintiff's rights. However, Plaintiff clearly alleges that Defendant Flores officially abolished Jumu'ah prayer services for Muslims, including Plaintiff. Sec. Amend. Compl. p. 4   Plaintiff has alleged sufficient facts to support a claim that Defendant Flores burdened his practice of Jumu'ah by preventing him from attending prayer services. Shakur, 514 F.3d at 884-85.

For the reasons stated, Defendants' motion to dismiss Plaintiff's claims against Defendants Hedgpeth and Flores should be denied.

    b.  Defendant Wegman

Defendants argue that Plaintiff's own evidence demonstrates that he cannot state a claim against Defendant Wegman because Defendant Wegman partially granted his appeal and was "responsive" to Plaintiff's concerns by telling Plaintiff that KVSP was in the process of hiring a new Muslim chaplain and the Jewish chaplain could provide Plaintiff services in the meantime. (ECF No. 64, p. 9; Ex. D to Sec. Amend. Compl.)

Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

1  evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is
2  very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir.
3  2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d
4  1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the
5  claim . . . .'") (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001)). As previously stated,
6  on a motion to dismiss, the factual allegations of the complaint must be accepted as true, Marder,
7  450 F.3d at 448, and resolve all doubts in the pleader's favor, Hebbe, 627 F.3d at 340.

8      In his complaint, Plaintiff alleges that Defendant C. Wegman, the Community Partnership
9  Manager ("CPM"), interviewed Plaintiff in connection with his inmate appeal.  Plaintiff explained
10 to Defendant Wegman that his rights to Jumu'ah were being denied due to the lack of a Muslim
11 Chaplain to conduct services and the refusal to appoint an inmate minister while KVSP did not have
12 a hired chaplain or volunteer to supervise Jumu'ah.  Defendant Wegman partially granted his appeal,
13 admitting that KVSP did not have a Muslim Chaplain, but that Jumu'ah services were scheduled for
14 Fridays at noon.  Plaintiff objected to Defendant Wegman's response because Jumu'ah services were
15 still not being conducted and Defendant Wegman evaded the issue of an inmate minister being
16 allowed to conduct Jumu'ah in the absence of a chaplain or volunteer.  Plaintiff alleges that
17 Defendant Wegman had the authority, as CPM and head of religious programming, to ensure that
18 Plaintiff's religious practice was not needlessly and intentionally burdened. (Sec. Amend. Compl.
19 pp. 6-7, 16-20; Exhibit D to Sec. Amend. Compl.)  Plaintiff also alleges that Defendant Wegman
20 told N. Grannis that there was no Muslim chaplain and volunteers had stopped volunteering. (Sec.
21 Amend. Compl. p. 8.)

22     Construing the allegations in a light favorable to Plaintiff, it is clear that he has alleged
23 Defendant Wegman knew that he was not allowed to participate in or to attend Jumu'ah services on
24 Fridays in the absence of a Muslim chaplain or volunteer, that this lack of participation was ongoing
25 and that Defendant Wegman had the authority to correct it.  As the Court previously determined,
26 Plaintiff states a cognizable claim for a violation of the Free Exercise Clause of the First Amendment
27 against Defendant Wegman.  Accordingly, Defendants motion to dismiss Plaintiff's claims against
28 Defendant Wegman should be denied.

        c.        Defendant Lewis

Defendants contend that Plaintiff cannot state a claim against Defendant Lewis because Plaintiff alleges no facts showing that Defendant Lewis had any involvement in the Yard A religious services other than his review of Plaintiff's grievance. Defendants also contend that Defendant Lewis was responsive to Plaintiff's grievance and there are no allegations that Defendant Lewis was aware that Plaintiff could not attend Jumu'ah services.

In his second amended complaint, Plaintiff alleges that Defendant Lewis responded to his grievance by stating that volunteers sometimes volunteered to conduct services, that the hired Rabbi did not conduct services on Friday, and that when it was clear that spiritual leaders could not be obtained, then accommodations would be made. Plaintiff also alleges that Defendant Lewis had the authority to accommodate Plaintiff, but failed to address Plaintiff's issue that KVSP was denying him religious services by not obtaining an authority figure who could supervise Jumu'ah services and by denying Plaintiff an inmate minister to lead him in Jumu'ah services in the absence of a hired chaplain. (Sec. Amend. Compl. pp. 19-21.)

As this Court previously determined, Plaintiff's allegation that Defendant Lewis partially granted Plaintiff's appeal, was aware that Muslim inmates were being denied access to Jumu'ah services, and failed to act to correct the violation while having the authority to do so states a cognizable claim for a violation of the Free Exercise Clause of the First Amendment. Shakur, 514 F.3d at 884-85. Defendants' motion to dismiss the claims against Defendant Lewis should be denied.

**2.**    **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because their actions were reasonable under the circumstances. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (citations

omitted). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001) overruled in part by Pearson v. Callahan, 555 U.S. at 236, 129 S.Ct. at 818.  The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft, 131 S.Ct. at 2080. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id. at 2083; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011).  The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. at 818.

      Defendants argue that they are entitled to qualified immunity because none of their actions amounted to a constitutional violation.  (ECF No. 64, p. 13.)  At this stage of the action, Defendants' argument is unsupported given the Court's determination that Plaintiff has stated claims against them for violations under the First Amendment to the United States Constitution.

      Defendants next argue that they are entitled to dismissal of Plaintiff's claims because reasonable prison staff could have believed that Defendants' conduct was not unlawful. However, Plaintiff has alleged a complete denial of his access to Jumu'ah services.  At a basic level, a denial of access to such services would violate the clearly established protections of the Free Exercise Clause. Shakur, 514 F.3d at 884-85.  Accordingly, there is no basis to determine, at this stage, that Defendants are entitled to qualified immunity.

## VI.     Conclusion and Recommendation

      Based on the foregoing, the Court  HEREBY RECOMMENDS as follows:

1. Defendants' motion to dismiss for failure to state a claim, filed July 5, 2012, be DENIED; and

2. Defendants' motion to dismiss based upon qualified immunity be DENIED

without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   March 25, 2013               /s/ Barbara A. McAuliffe
                                     UNITED STATES MAGISTRATE JUDGE