1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL MOOTRY,                  )  Case No.: 1:09-cv-01252-LJO-BAM (PC)
                                      )
12                  Plaintiff,        )
                                      )
13        v.                          )  FINDINGS AND RECOMMENDATIONS
                                      )  REGARDING (1) PLAINTIFF'S MOTION
14   E.G. FLORES, et al.,             )  REQUESTING PERMISSION TO FILE OUT OF
                                      )  CALENDAR DISCOVERY; (2) PLAINTIFF'S
15                  Defendants.       )  SURREPLY; AND (3) DEFENDANT'S MOTION
                                      )  FOR SUMMARY JUDGMENT
16                                    )  (ECF Nos. 97, 100, 108, 109)
                                      )
17                                    )  FOURTEEN-DAY DEADLINE
                                      )
18                                    )
                                      )
19                                    )
     ─────────────────────────────────)

20

21   **I.      Introduction**

22          Plaintiff Michael Mootry ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis

23   in this civil rights action pursuant to 42 U.S.C. § 1983, alleges that Defendants Hedgpeth, Flores,

24   Wegman, Lewis, and Cabrera violated his rights under the Free Exercise Clause of the First

25   Amendment by denying him access to Jumu'ah prayer services while he was confined at Kern Valley

26   State Prison ("KVSP") from June 2006 through July 2010.   The denial resulted from (1)

27   implementation of a Department of Operations policy added by Defendant Hedgpeth forbidding

28   inmate ministers from leading inmate religious services without a supervising chaplain or volunteer;

                                        1

and (2) Defendant Cabrera's refusal to release Muslim inmates to attend Jumu'ah or Ta'aleem services.

On October 3, 2014, Defendants filed a motion for summary judgment on the ground that Plaintiff's claims fail as a matter of law because the policy revision precluding inmate ministers and subsequent implementation were reasonable.  Defendants also contend that they are entitled to qualified immunity.[1]  (ECF No. 97.)

In lieu of an opposition, on November 17, 2014, Plaintiff filed a motion requesting permission to file out of calendar discovery.  (ECF No. 100.)  Defendants opposed the motion on December 8, 2014.  (ECF No. 101.)  Plaintiff did not reply.

On April 20, 2015, Plaintiff filed his opposition to Defendants' motion for summary judgment.  (ECF Nos. 103, 104.)  Following an extension of time, Defendants replied on May 19, 2015.  (ECF No. 107.)  Thereafter, Plaintiff filed a surreply and request for judicial notice in response to Defendants' reply.  (ECF Nos. 108, 109.)

Plaintiff's motion to file out of calendar discovery and Defendants' motion for summary judgment have been submitted upon the record.  Local Rule 230(l).

## II.   Plaintiff's Motion to File Out of Calendar Discovery

Plaintiff moves for additional discovery in order to oppose Defendants' motion for summary judgment.[2]  In particular, Plaintiff seeks additional discovery regarding certain undisputed facts asserted by Defendants in their moving papers, which Plaintiff claims are unsupported by evidence, including facts regarding the nature of offenders housed at Kern Valley State Prison, the state-wide hiring freeze and the authority of certain defendants to change policies.  (ECF No. 100, pp. 6-7.)  Plaintiff also generally contends that certain of Defendants' facts and exhibits cannot be admitted or denied until after further discovery.  (ECF No. 100, p. 7.)

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  ECF No. 97-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

[2] Although Plaintiff brings the motion pursuant to Federal Rule of Civil Procedure 56(f), he is seeking to defer consideration of the motion for summary judgment in order to conduct additional discovery.  Such an action is contemplated by Rule 56(d).  Therefore, the Court considers the motion pursuant to Rule 56(d).

**A. Legal Standard**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).   Plaintiff bears the burden of specifically identifying relevant information, where there is some basis for believing that the information actually exists, and demonstrating that the evidence sought actually exists and that it would prevent summary judgment. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009) (citation omitted); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006). Additionally, Plaintiff must make some showing of diligence, that he sought the requested information during the discovery period, or that there is good reason he has not been able to obtain the information before now. *See Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372 (9th Cir. 1985).

**B. Discussion**

As a preliminary matter, the Court finds that Plaintiff has not demonstrated diligence in seeking the requested discovery.  Plaintiff's motion seeking to propound additional discovery was not timely filed in response to Defendants' motion for summary judgment.  Defendants filed their motion for summary judgment on October 3, 2014, and Plaintiff's response was due on or before October 27, 2014.  Even applying the prison mailbox rule, Plaintiff submitted the instant motion more than two weeks late on November 12, 2014.  *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (prison mailbox rule applies to section 1983 actions).  Plaintiff also does not explain why he did not or could not seek the requested information during the more than year-long period allowed for discovery. Discovery in this action opened on May 22, 2013, was extended twice at Plaintiff's request, and closed on July 14, 2014.  (ECF No. 69, 80, 86.)  Plaintiff's contention that Defendants are raising issues that have never been litigated in these proceedings lacks merit.  It cannot be said that any of Defendants' defenses in response to Plaintiff's allegations are new, novel or could not have been identified during the course of discovery.

Additionally, Plaintiff has not met the standard for obtaining additional discovery.   In particular, Plaintiff has not identified what relevant information he seeks or how any such information

1   would prevent summary judgment.  *Blough*, 574 F.3d at 1091 n. 5.  That Plaintiff seeks evidence

2   related to certain of Defendants' purportedly unsupported facts is both unnecessary and

3   counterproductive.  Rather, Plaintiff may simply deny the facts as unsupported by any evidence.

4       For these reasons, the Court will recommend that Plaintiff's motion to file out of calendar

5   discovery be denied.

6       ### III.   Plaintiff's Surreply and Request for Judicial Notice

7       As noted above, Defendants filed a motion for summary judgment, Plaintiff responded and

8   Defendants replied. (ECF Nos. 97, 103, 104, 107.)  Thereafter, on June 8, 2015, Plaintiff filed a

9   response to Defendants' reply, along with a supporting request for judicial notice.  (ECF Nos. 108,

10  109.)

11      This Court's Local Rules provide for a motion, an opposition, and a reply. Local Rule 230(1).

12  Neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a response to

13  a reply. *See, e.g., Wyatt v. Zanchi*, No. 1:09-cv-01242 BAM PC, 2011 WL 5838438, at *5 (E.D. Cal.

14  Nov. 21, 2011).  Furthermore, the Court neither requested a response to Defendants' reply nor granted

15  a request on Plaintiff's behalf to file one.  The Court notes that Defendants' reply includes a

16  withdrawal of Defendant Cabrera's original declaration and the submission of a revised declaration.

17  However, Plaintiff's response to Defendants' reply does not address or concern the revised

18  declaration.

19      Accordingly, the Court will recommend that Plaintiff's response to Defendants' reply, along

20  with Plaintiff's supporting request for judicial notice (ECF Nos. 108 and 109), be stricken from the

21  record and not considered for purposes of summary judgment.

22      ### IV.   Defendants' Motion for Summary Judgment

23          #### A.  Legal Standard for Summary Judgment

24      Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the

25  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26  judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery

27  and upon motion, against a party who fails to make a showing sufficient to establish the existence of

28  an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B.  Undisputed Material Facts ("UMF")

1.   Plaintiff has been a practicing Muslim since shortly after his incarceration in 2002. (Defs' Ex. E [Mootry Depo. 15:7-18].)

2.   Plaintiff was incarcerated at Kern Valley State Prison (KVSP) from June 1, 2006, until July 20, 2010. (Samson Dec. ¶¶ 3, 5; Defs' Ex. D.)

3.   On December 7, 2007, Defendant Warden Hedgpeth approved revisions to KVSP Department Operations Manual (DOM) supplement 101060 et seq. (Hedgpeth Dec. ¶ 3; Defs' Ex. A.)

4.      Effective December 7, 2007, DOM supplement 101060.6.3 mandated that "[n]o inmate w[ould] be authorized or allowed to conduct or lead any religious services, classes, or groups of any kind in the facility chapels, without being under the direct supervision of a facility chaplain or authorized volunteer." (Hedgpeth Dec. ¶ 3; Flores Dec. ¶ 4; Defs' Ex. A.)

5.      KVSP is a maximum security prison; the vast majority of inmates who reside there are level four inmates who are considered violent and dangerous. (Hedgpeth Dec. ¶ 6; Flores Dec. ¶ 5.)

6.      Defendant Hedgpeth implemented the DOM supplement because safety and security concerns necessitated that all group services be conducted in the chapel and directly supervised by an authorized CDCR official.   (Hedgpeth Dec. ¶¶ 7-9; Flores Dec. ¶¶ 6-8; Wegman Dec. ¶ 12; Lewis Dec. ¶ 8.)

7.      Defendants Flores, Wegman, Lewis, and Cabrera did not have the ability to revise DOM supplement 101060.6.3 and were required to enforce the policy as written. (Flores Dec. ¶ 9; Wegman Dec. ¶ 23; Lewis Dec. ¶ 10; Cabrera Dec. ¶ 5.)

In attempting to raise a genuine dispute, Plaintiff references the job descriptions of Defendants Wegman, Lewis, Flores and Cabrera.   Of those, only Defendant Wegman's job description, that of Community Resources Manager, identifies policy review and approval of DOM supplements and Operational Procedures updates necessary for areas of responsibility of the Community Resources Manager.  (Pl's Opp'n, Ex. C.)  However, there is no indication that Defendant Wegman had authority to revise a DOM supplement approved by the Warden.   Further, to the extent any of the Defendants, including Defendant Flores, were part of the religious review committee, there is no evidence that they were vested with authority to revise existing DOM policy.  (Pl's Opp'n, Ex. F.)

8.      On August 28, 2006, Chaplain Mustafa was employed by KVSP to serve as the Muslim Chaplain and supervise Muslim services. (Hedgpeth Dec. ¶ 10.)

9.      As a result, when DOM supplement 101060.6.3 was enacted, Chaplain Mustafa was employed by KVSP and the implementation of the policy should therefore not have had any effect on Muslim religious services. (Hedgpeth Dec. ¶ 11.)

10.      On December 20, 2007, however, KVSP initiated a personnel investigation concerning Chaplain Mustafa. (Hedgpeth Dec. ¶ 12; Flores Dec. ¶ 11.)

11.     During the pendency of the personnel investigation, Chaplain Mustafa was precluded from entering the prison or supervising religious services. (Hedgpeth Dec. ¶ 13; Flores Dec. ¶ 12.)

12.     Due to budgetary constraints, KVSP was unable to hire a replacement Chaplain until the personnel investigation was complete and Chaplain Mustafa's employment was terminated. (Hedgpeth Dec. ¶ 14; Flores Dec. ¶ 13.)

Plaintiff has not raised a genuine dispute regarding Defendants' inability to hire a replacement chaplain during the period of investigation and employment of Chaplain Mustafa.  Plaintiff's argument that Defendants' identification of budgetary constraints are a pretext because Defendants Wegman and Lewis did not cite these constraints in response to his inmate grievance is inapposite and does not raise a genuine dispute of material fact.  Unlike administrative exhaustion, budgetary constraints are not an affirmative defense that can be waived. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (failure to exhaust is an affirmative defense under the Prison Litigation Reform Act); Fed. R. Civ. P.  12(b) (h).  Prison officials' failure to include all possible defenses to a claim in the administrative appeal response does not waive those defenses.  In other words, appeal responses do not constrain the ability of prison officials to make merits-based arguments as to a prisoner's substantive legal claims in federal court proceedings.  Furthermore, it is undisputed that there were budgetary constraints in 2008 during the relevant time period of investigation and termination of Chaplain Mustafa's employment. (Wegman Dec. ¶ 14; Pl's Opp'n ¶ 12).   There also is no evidence that the prison could hire a replacement chaplain for a position then-occupied by Chaplain Mustafa.

13.     Defendants Wegman and Lewis could not expedite the interview process for a Muslim Chaplain, and did not have any authority over the applicant pool, interview process, hiring criteria, timing associated with the hiring of a new chaplain, or the availability of volunteers. (Wegman Dec. ¶¶ 24-26; Lewis Dec. ¶¶ 11-12.)

14.     The personnel investigation was not completed until September 23, 2008. (Hedgpeth Dec. ¶ 15.)

15.     Chaplain Mustafa's employment with KVSP did not effectively end until October 9, 2008. (Hedgpeth Dec. ¶ 16.)

16. During the time that Chaplain Mustafa was unavailable to supervise Muslim services, Defendants Flores and Wegman requested that other chaplains supervise as many additional services outside their own religion as possible, in each of the facilities. (Flores Dec. ¶ 14; Wegman Dec. ¶ 13.)

17. Defendant Wegman also reached out to a Muslim group in Fresno to seek volunteer candidates and offered to schedule Jumu'ah services on a different day of the week than Friday, but her offer was rejected. (Wegman Dec. ¶¶ 15-16.)

18. Due to scheduling constraints, services could not always be conducted when chaplains or volunteers were unavailable to provide coverage. (Flores Dec. ¶¶ 15, 17; Wegman Dec. ¶ 7, 14.)

19. In April 2009, KVSP hired a new Muslim Chaplain, Muhammad. (Defs' Ex. E [Mootry Depo. 33:12-25].)

20. Plaintiff alleges that he was prevented from attending Jumu'ah services from March 28, 2008 until April 24, 2009. (Defs' Ex. E [Mootry Depo. 27:21-25; 28:1-21].)

21. Muslim faith requires that Jumu'ah services be conducted every Friday through group prayer of seven individuals or more. (Defs' Ex. E [Mootry Depo. 18:20-25; 19:1-4; 22:22-25].)

22. Between March 28, 2008 and April 24, 2009, the Christian Chaplain or other volunteer ran Jumu'ah services three times. (Defs' Ex. E [Mootry Depo. 36:1-7].)

23. Between March 28, 2008 and April 24, 2009, Jumu'ah services continued to be scheduled to occur on Fridays, but would not necessarily occur if a supervisor was unavailable. (Wegman Dec. ¶ 7; Defs' Ex. C.)

24. Occasionally, services would be cancelled in the event of a lockdown or modified program, or an extreme security event. (Flores Dec. ¶ 16; Wegman Dec. ¶¶ 21-22.)

25. Between March 28, 2008 and April 24, 2009, however, Plaintiff was able to regularly participate in Tal'eem services each week, receive special religious foods and services every day for the entire month of Ramadan, and two other "big" annual services, receive a religious dietary meal, special religious packages of prayer oils, foods, and relics, and pray in his cell. (Defs' Ex. E [Mootry Depo. 17:23-24; 23:13-23; 36:11-20]; Wegman Dec. ¶ 17.)

26.     In addition, Plaintiff was housed with inmate Earnest Granberry, who was the elected inmate minister that Plaintiff wished to have lead the prayer for Jumu'ah services. (Defs' Ex. E [Mootry Depo. 19:5-25; 20:1-3; 21:11-15; 40:2-24].)

27.     On August 6, 2008, Plaintiff filed an administrative grievance, KVSP-O-08-01724, regarding the denial of Jumu'ah services and a Muslim chaplain or inmate minister. Specifically, Plaintiff alleged that Warden Hedgpeth, Captain Flores, and Sergeant Stark denied Plaintiff Jumu'ah congregation prayer services on Fridays and denied him access to speak or meet with an Imam or inmate minister of Islamic faith. Plaintiff requested that he be allowed to attend and participate in Jumu'ah prayer services and have the opportunity to speak with a Muslim Chaplain or inmate minster regularly. (Pl.'s Second Am. Compl., p. 6, ECF No. 60; Wegman Dec. ¶ 3; Defs' Ex. B.)

28.     Defendant Wegman interviewed Plaintiff regarding his administrative grievance in September 2008. (Pl.'s Second Am. Compl., p. 6, ECF No. 60; Wegman Decl., ¶ 6; Defs.' Ex. B.)

29.     Defendant Wegman partially granted the administrative grievance at the first level, on the basis that KVSP did not have a Muslim chaplain at that time. The response also indicated that Plaintiff was not "denied" services because Jumu'ah services were scheduled for Fridays at noon at the A yard chapel. (Pl.'s Second Am. Compl., p. 6, ECF No. 60; Wegman Dec. ¶ 7; Defs' Ex. B.)

30.     At the second level of review, Plaintiff complained that, even though Jumu'ah services were scheduled, he was not allowed to participate in them because there was no Muslim chaplain or volunteer to lead the services, KVSP would not permit an inmate minister to lead the services, and the only chaplain available to conduct the services was a Jewish Rabbi, who did not work on Fridays. (Pl.'s Second Am. Compl., pp. 6-7, ECF No. 60; Defs' Ex. B.)

31.     To assist in responding to Plaintiff's administrative grievance, Correctional Counselor II (CCII) D. Tarnoff investigated Plaintiff's allegations. (Lewis Dec. ¶ 3; Cabrera Dec. ¶ 9.)

32.     Defendant Lewis relied, in part, on the findings of CCII D. Tarnoff when responding to Plaintiff's second level administrative grievance on December 5, 2008. (Lewis Dec. ¶ 4.)

33.     CCII D. Tarnoff informed Defendant Lewis that Facility A relied on outside volunteers to conduct Jumu'ah services because they only had a Jewish Rabbi at that time, and the Rabbi did not work on Fridays. (Lewis Dec. ¶ 5; Cabrera Dec. ¶ 10.)

34.     CCII D. Tarnoff also informed Defendant Lewis that KVSP was in the process of hiring spiritual leaders. (Lewis Dec. ¶ 7.)

35.     Based, in part, on CCII D. Tarnoff's representations, Defendant Lewis partially granted Plaintiff's administrative grievance. (Lewis Dec. ¶ 9.)

36.     After Plaintiff appealed his administrative grievance to the third level of the review process, Defendant Wegman was contacted on February 3, 2009, by the third level appeals examiner to discuss Plaintiff's allegations. (Wegman Dec. ¶ 8; Defs' Ex. B.)

37.     Defendant Wegman informed the third level appeals examiner that the institution currently employed only one full-time chaplain, making it difficult to fully meet the needs of the various religious groups. (Wegman Dec. ¶ 9; Defs' Ex. B.)

Plaintiff attempts to raise a genuine dispute of fact by contending that KVSP's position records show that at least 4 available chaplains were employed during the 2008 period.  (Pl's Opp'n, Ex. J.) Although the cited records demonstrate that the prison employed at least four chaplains during the relevant time period, there is no indication that these individuals were available on Fridays for Jumu'ah services or were required to supervise services outside their religious faiths.  (Defs' Ex. A.)

38.     Defendant Wegman also informed the appeals examiner that interviews for a new Muslim Chaplain had been completed and that she anticipated that a replacement Chaplain would be hired in the near future. (Wegman Dec. ¶ 10; Defs' Ex. B.)

39.      In order for an inmate to attend religious services, inmates needed to request to be added to the services list. (Wegman Dec. ¶ 19.)

40.     The Facility Captain was required to approve the services list. (Wegman Dec. ¶ 20; Cabrera Dec. ¶ 3.)

41.     Between March 2008 and April 2009, Defendant Cabrera was employed as a Facility A Lieutenant, not Captain. (Cabrera Dec. ¶ 1.)  During that time, Defendant Cabrera occasionally filled in as the Acting Captain if the Captain was out sick, at a doctor's appointment or on vacation.  His classification from Facility A lieutenant to Acting Captain did not occur until July 20, 2009.  (Cabrera Supp. Dec. ¶¶ 3-7 and Ex. A.)

10

42.     Plaintiff alleges that Defendant Cabrera precluded him from attending Jumu'ah services sometime after August 2, 2008, by refusing to sign the release sheet once. (Defs' Ex. E [Mootry Depo. 115:1-25; 116:1-8].)

43.     Plaintiff alleges that of the three times he was released to attend Jumu'ah services, Defendant Cabrera observed officers delay his release to services once. (Defs' Ex. E [Mootry Depo. 120:23-25; 121:1-17; 123:1-23; 126:11-25; 127:1-6].)

44.     Plaintiff does not allege that Defendant Cabrera personally refused to search inmates before and after chapel services. (Defs' Ex. E [Mootry Depo. 118:22-25; 119:1-25; 120:1].)

45.     Plaintiff did not personally witness Defendant Cabrera refuse to sign a release sheet or refuse to release inmates for Jumu'ah services. (Defs' Ex. E [Mootry Depo. 110:13-18; 111:12-18; 113:2-8].)

46.     As Facility A Lieutenant, Defendant Cabrera was not responsible for signing inmate release sheets for chapel services, but on days he was filling in as Acting Captain, he would need to sign any necessary paperwork on behalf of the Captain. (Cabrera Dec. ¶ 2; Cabrera Supp. Dec. ¶ 9)

47.     As Facility A Lieutenant or even when filling in as Acting Captain, Defendant Cabrera was also not responsible for searching inmates to be released to chapel or for searching inmates upon their return from chapel services. (Cabrera Dec. ¶ 4; Cabrera Supp. Dec. ¶ 10.)

48.     Defendant Cabrera does not recall any instances where he refused to sign an inmate release sheet or cancel services for an arbitrary reason. Defendant Cabrera also does not recall observing any officers arbitrarily denying or delaying an inmate's access to religious services or hearing an officer refuse to permit an inmate from attending religious services for arbitrary reasons. (Cabrera Dec. ¶¶ 6-8; Cabrera Supp. Dec. ¶¶ 12-14.)

### C.  Discussion

"The First Amendment, applicable to the States by reason of the Fourteenth Amendment . . . prohibits government from making a law 'prohibiting the free exercise (of religion).'" *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).  "[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion . . . is limited by institutional objectives and by the

1  loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*,
2  707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1997)).

3      Although inmates retain the right of free exercise of religion, this right "is necessarily limited
4  by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to
5  maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see*
6  *also O'Lone*, 482 U.S. at 348; *Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008). "To ensure
7  that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe
8  constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily
9  applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349.
10 Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the
11 regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482
12 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation
13 and the legitimate government interest put forward to justify it," and "the governmental objective must
14 be a legitimate and neutral one." *Id.* A second consideration is "whether there are alternative means
15 of exercising the right that remain open to prison inmates." *Id.* at 90 (internal quotations and citation
16 omitted). A third consideration is "the impact accommodation of the asserted constitutional right will
17 have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally,
18 the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

19      <u>Defendants Hedgpeth and Flores</u>

20      Plaintiff claims that Defendants Hedgpeth and Flores implemented and enforced policies that
21 abolished Jumu'ah prayer services. (ECF No 61, p. 6; ECF No. 63.) Beginning with the investigation
22 of Chaplain Mustafa on December 20, 2007, Plaintiff's reported inability to attend Jumu'ah services
23 stemmed primarily from KVSP's policy prohibiting inmate ministers from leading services in the
24 absence of direct supervision by a chaplain or authorized volunteer. Defendants contend that
25 summary judgment is appropriate on Plaintiff's claims premised on this preclusion of unsupervised

26
27
28

inmate ministers because the policy was reasonable in light of KVSP's interests in the safety and security of both the inmates and prison personnel.  (Defs' MSJ at 12-15.)[3]

Recognizing that inmate-led services can pose security threats to the prison system, the Ninth Circuit, in applying the *Turner* factors, has rejected a First Amendment challenge against the very type of prison policy at issue here. *See Anderson v. Angelone*, 123 F.3d 1197, 1199 (9th Cir. 1997) ("Nevada's prohibition on inmate-led religious services does not violate the First Amendment."). Indeed, at least one other district court has rejected a First Amendment challenge to the KVSP policy prohibiting unsupervised inmate ministers from leading services.   In *Davis v. Flores*, No. 1:08cv01197-JTM(JMA), 2013 WL 969151, *1 (E.D. Cal. Jul. 2, 2010), a state prisoner alleged that officials at KVSP, including Warden Hedgpeth and Correctional Officer Flores, violated his constitutional and statutory rights related to his ability to attend Jumu'ah services from late December 2007 through May 2009 because of the dismissal of Muslim Chaplain Mustafa and the prison prohibition of unsupervised Jumu'ah services.  *Id.*  at *1-2.  The prisoner sought injunctive relief to allow an inmate minister to conduct Jumu'ah prayer services.  *Id.* at *2.  Prison officials moved for summary judgment on the prisoner's First Amendment claim, arguing that their need to temporarily suspend Muslim services was reasonable in light of their competing interest to ensure the safety of prisoners.  *Id.* In reviewing the policy based on the *Turner* factors, the *Davis* court found that no reasonable alternatives, such as unsupervised services in the yard, were available.  The *Davis* court posited that if a fight broke out during services, no employees would be there to stop the fight, which could escalate before KVSP employees could break it up.  The *Davis* court reasoned that allowing unsupervised services could strain KVSP's security, endangering both prisoners and KVSP's employees.  *Id.*  at *4.  As Chaplain Mustafa appeared to have provided contraband to prisoners attending Muslim services, the *Davis* court believed that KVSP was "right to be weary [sic] of permitting such additional freedoms."  *Id*.  For these reasons, the *Davis* court granted summary judgment in favor of KVSP prison officials on the prisoner's First Amendment claim.  *Id.*  The *Davis* court's decision was affirmed on appeal, with the Ninth Circuit finding that the district court properly

---

[3]Unless otherwise indicated, pagination corresponds with numbering on the Court's electronic docket, CM/ECF.

granted summary judgment on the prisoner's First Amendment claim premised on a prison prohibition of unsupervised inmate-led religious services because the prisoner failed to raise a genuine dispute of material fact as to whether the prohibition was reasonably related to legitimate penological interests. *Davis v. Flores*, 592 Fed.Appx. 569 (9th Cir. 2015).

As with *Davis*, and applying the relevant *Turner* factors, the Court finds that Plaintiff has failed to raise a genuine dispute of material fact as to whether KVSP's policy prohibiting unsupervised religious services was reasonably related to legitimate penological interests.   First, Defendants presented evidence of legitimate penological interests in prohibiting unsupervised inmate-led religious services.   In particular, Defendants noted that (1) KVSP is a maximum security prison housing level four inmates who are considered violent and dangerous, (2) prior to the enactment of the DOM supplement at issue, riots and fights had erupted in the chapel, endangering staff and inmates, and (3) a specific conflict had erupted between two different Muslim sects in the chapel.   UMF 6; Hedgpeth Dec. ¶¶ 7-9; Flores Dec. ¶¶ 5-8; Wegman Dec. ¶ 12; Lewis Dec. ¶ 8.   Plaintiff counters by contending that safety and security concerns were not raised earlier in this litigation, the allegations of fights and riots are not supported by specifics, and the assertion of security concerns are too vague.   (Pl.'s Opp'n at 2.)   Plaintiff's contentions are not sufficient to raise a genuine dispute of material fact.   First, that security concerns were not previously raised in this litigation is not persuasive.   The assertion of a legitimate penological interest in adopting the relevant policy, such as prison safety concerns, is a reasonably anticipated defense to a First Amendment challenge.   *Turner*, 482 U.S. at 89. Second, the security level of inmates housed at KVSP combined with declarations attesting to riots, fights and conflicts, is sufficient to demonstrate a legitimate safety concern in unsupervised religious services taking place in the chapel.   As noted, the Ninth Circuit has upheld policies prohibiting inmate-led religious services for security reasons.   *See Anderson*, 123 F.3d at 1198–99.   Third, and finally, anticipation of safety and security issues arising in the chapel from unsupervised inmates is sufficient to meet the relevant standard.   *See Standing Deer v. Carlson*, 831 F.2d 1525, 1528 (9th Cir.1987) (prison officials not required to demonstrate that the prisoners' religious practices are causally related to existing institutional problems; court restricts inquiry to considering whether the challenged regulation is *logically connected* to legitimate penological concerns).

The undisputed evidence also reflects that Plaintiff had alternative means of exercising his constitutional rights.   First, Plaintiff was permitted to attend Jumu'ah services when a chaplain or other volunteer was available to supervise the services.  UMF 23.  Plaintiff's assertion that Defendants had four available chaplains and could have appointed one for Friday services lacks support.  (Pl.'s Opp'n at 12.)  There is no indication that Defendants could require other chaplains to supervise services on other than a volunteer basis.  According to the DOM, prison chaplains or Native American spiritual leaders were only required to provide regularly scheduled worship services and religious activities for their "respective faith groups."  (Defs' Ex. A.) With respect to volunteer services, it is undisputed that during the time that Chaplain Mustafa was unavailable to supervise Muslim services, Defendants Flores and Wegman requested that other chaplains supervise as many additional services outside their own religion as possible, in each of the facilities. UMF 16.   Defendant Wegman also reached out to a Muslim group in Fresno to seek volunteer candidates and offered to schedule Jumu'ah services on a different day of the week than Friday, but her offer was rejected. UMF 17.

Second, while Plaintiff may have been unable to attend unsupervised Jumu'ah services for a period of time during the personnel investigation of Chaplain Mustafa and the hiring of a new Muslim Chaplain, Plaintiff was not precluded from practicing his religion in other ways.  *See O'Lone*, 482 U.S. at 352 (ability on the part of prisoners to participate in other religious observances of their faith supports the conclusion that the restrictions at issue are reasonable); *Chau v. Young*, No. C 13-764 SI (PR), 2014 WL 4100635 (N.D. Cal. Aug. 20, 2014) ("The denial of access to group religious services did not deprive Chau of all means of exercising his religious beliefs. Chau remained able to worship alone in his cell and had access, upon request, to an Islamic services to discuss spiritual matters"); Indeed, the undisputed evidence establishes that between March 28, 2008 and April 24, 2009, Plaintiff was able to regularly participate in Tal'eem services each week, receive special religious foods and services every day for the entire month of Ramadan, and two other "big" annual services, receive a religious dietary meal, special religious packages of prayer oils, foods, and relics, and pray in his cell. UMF 25.   Additionally, Plaintiff was housed with inmate Earnest Granberry, who was the elected inmate minister that Plaintiff wished to have lead the prayer for Jumu'ah services, and Plaintiff was not precluded from praying in his own cell with Inmate Granberry. UMF 26.

Finally, in light of the prison's security concerns, no reasonable alternatives, such as unsupervised services in the yard, appear to be available.  As discussed in *Davis*, if a fight broke out during services, no employees would be there to stop the fight, which could escalate before KVSP employees could break it up.  Further, allowing unsupervised services could strain KVSP's security, endangering both prisoners and KVSP's employees.   Additionally, Defendants attempted to accommodate Plaintiff's rights by requesting that other chaplains supervise Friday Jumu'ah services as they were available.  UMF 16.

The Court finds that KVSP's prison regulation prohibiting unsupervised inmate-led religious services is reasonably related to legitimate penological interests in safety and security.  Defendants Hedgpeth and Flores are therefore entitled to summary judgment on Plaintiff's First Amendment claims arising from implementation and enforcement of the regulation.

Defendants Wegman and Lewis

Plaintiff claims that Defendant Wegman partially granted his grievance, but failed to address that Muslim inmates were being denied access to Jumu'ah services.  Similarly, Plaintiff claims that Defendant Lewis partially granted his appeal, was aware that Muslim inmates were being denied access to Jumu'ah services, and failed to act to correct the violation while having the authority to do so.  (ECF No. 61, p. 7; ECF No. 63.)

On August 6, 2008, Plaintiff resubmitted an administrative grievance, KVSP-O-08-01724, regarding the denial of Jumu'ah services and a Muslim chaplain or inmate minister. UMF 27.  On October 15, 2008, Defendant Wegman partially granted the administrative grievance at the first level. Defendant Wegman indicated that Plaintiff was not being denied services, but KVSP did not currently have a Muslim Chaplain.  Defendant Wegman noted that Jumu'ah services were scheduled for Fridays at noon at the A yard chapel.  UMF 27.  Thereafter, Plaintiff submitted his administrative grievance to the second level.

At the second level of review, Plaintiff complained that, even though Jumu'ah services were scheduled, he was not allowed to participate in them because there was no Muslim chaplain or volunteer to lead the services, KVSP would not permit an inmate minister to lead the services, and the only chaplain available to conduct the services was a Jewish Rabbi, who did not work on Fridays.

UMF 30.  Defendant Flores partially granted the appeal, explaining that KVSP did not have a Muslim Chaplain, Jumu'ah serves were scheduled for Fridays, the Jewish Chaplain did not work on Fridays, but volunteer religious personnel conducted services when available.  Defendant Flores also indicated that KVSP was in the process of hiring spiritual leaders and only if KVSP could not obtain the appropriate personnel would alternate measures be taken to ensure the availability of religious services.  (Defs Ex. B; UMF 33-35.)

It is evident that Defendants Wegman and Flores addressed Plaintiff's grievance, acknowledged the lack of a Muslim chaplain and addressed the scheduling of services.  Plaintiff's disagreement with the responses or outcome of his grievance does not amount to a constitutional claim.  The existence of an administrative remedy process does not create any substantive rights and cannot support a claim for relief for violation of a constitutional right. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  As suggested by Defendants, it appears that Plaintiff is complaining that Defendants Wegman and Lewis failed to hire a Muslim Chaplain, expedite the interview process or disregard the policy prohibiting unsupervised, inmate-lead services.  (Defs' MSJ at 17.)  These complaints do not support a constitutional violation.

With respect to the hiring of a replacement chaplain, it is undisputed that Defendants Wegman and Lewis were unable to hire a new chaplain during the investigation of Chaplain Mustafa, which began on December 20, 2007, and ended on September 23, 2008, with the conclusion of Chaplain Mustafa's employment with KVSP on October 9, 2008.  UMF 10-15.  There is no indication that Defendants Wegman and Lewis could unilaterally hire a chaplain for a position that had not yet been vacated.  Moreover, within approximately six months after Chaplain Mustafa's departure, KVSP hired a new Muslim chaplain.  UMF 15-19.  Plaintiff's belief that Defendants Wegman and Lewis somehow should have hired a replacement chaplain sooner is not persuasive.  It is undisputed that Defendants Wegman and Lewis were unable to expedite the hiring process.  UMF 13.  Plaintiff attempts to raise a dispute of material fact by arguing that Defendants Wegman and Lewis, by virtue of their positions within KVSP, are participants in the hiring process.  (Pl.'s Opp'n at 6.)  While this may be true, at the most basic level, Defendants Wegman and Lewis would have no control over the chaplain applicant pool or the timing associated with advertising for, interviewing, and hiring a new chaplain.  UMF 13.

With respect to the policy requiring supervision of religious services, it is undisputed that Defendants Wegman and Lewis did not have the ability to revise DOM supplement 101060.6.3, and were required to enforce the policy as written.   UMF 7.   In attempting to raise a genuine dispute, Plaintiff references the job descriptions of Defendants Wegman and Lewis, along with the job descriptions and responsibilities of Defendants Flores and Cabrera. Of those, only Defendant Wegman's job description—that of Community Resources Manager—identifies policy review and approval of DOM supplements and Operational Procedures updates necessary for areas of responsibility of the Community Resources Manager.  (Pl.'s Opp'n, Ex. C.)  However, there is no indication that Defendant Wegman had sole authority to revise a DOM supplement approved by the Warden.   UMF 23 ("I did not have authority to revise the Department Operations Manual, which required that chapel services be supervised.") To the extent any of the Defendants, including Defendants Wegman and Flores, were part of the religious review committee, there is no indication that they were vested with unilateral authority to revise existing DOM policy.  (Pl.'s Opp'n, Ex. F).

For these reasons, the Court finds that Defendants Wegman and Lewis are entitled to summary judgment on Plaintiff's First Amendment claims.

<u>Defendant Cabrera</u>

With respect to Defendant Cabrera, this action proceeds on Plaintiff's allegations that Defendant Cabrera (1) refused to search inmates so they could not go into the chapel, (2) refused to sign release sheets that would have allowed inmates to be released to attend services; and (3) cancelled Jumu'ah services for no reason.  (ECF No. 61, p. 7.)

With respect to Plaintiff's claim that Defendant Cabrera refused to search inmates, Plaintiff denies alleging that Defendant Cabrera personally refused to search inmates for chapel services.  (Pl's Opp'n at 14.)   As this Court previously determined, Plaintiff can only assert a claim based on Defendant Cabrera's individual actions, not the actions of his subordinates.   (ECF No. 61, p. 7.) Accordingly, the Court only addresses Plaintiff's allegations that Defendant Cabrera refused to sign release sheets and cancelled Jumu'ah services for no reason.

18

Plaintiff admits that he did not witness Defendant Cabrera refuse to sign religious service release sheets or cancel services.  (Pl's Opp'n at 14-15.)  Instead, he relies on the declarations of other inmates.  For instance, Inmate Jerome H. Jackson declares:

> [I] witnessed M. Cabrera deny Muslim inmates Jumu'ah services on more than one occasion.  Although the volunteer was there to conduct Jumu'ah prayers, I recall him saying that "it's to[o] late, I'm leaving" and then left.  On another occasion he claimed that there was no list.  I knew this was false because as the head Mac. Rep, I help pass the list out to each building earlier that morning with the chapel clerk.

(Pl's Opp'n, Ex. G, Jackson Dec.)[4]  Inmate Malo Hull declares:

> That the officer always made up excuses of why we couldn't go to Juma'ah like the list wasn't here or the Lieutenant Cabrera didn't sign off to approve the list.  There was always a reason or excuse why myself or the Muslims couldn't attend the services.  Whether it was Ta'aleem or Juma'ah.

(Pl's Opp'n, Ex. L, Hull Dec.)  Additionally, Inmate Donald Glass attests:

> I witnessed and experienced Cabrera refuse to allow services because of "staff meetings" or other spontaneous "so called" administrative events which sometimes turned out to be nothing other then [sic] a staff members birthday or some kind of celebration.  That most times the list for Jumu'ah services would "not be signed by Cabrara" or "the Chaplain" or "the Chaplain has to call" etc…along with other excuses would be used as a smoke-screen to not let us have Jumu'ah services.

(Pl's Opp'n, Ex. M, Glass Dec.)

Assuming these declarations are admissible, the reported observations of Defendant Cabrera's alleged refusal to sign sheets or allow services are generalized, vague and have not been linked to any purported violation of Plaintiff's First Amendment rights.  None of Plaintiff's declarations identify any specific date or periods of any occurrence.  Each declarant's time of incarceration at KVSP spanned before or beyond the relevant period at issue in this case.  It is purely speculative whether any reported incident coincided with Plaintiff's alleged deprivation of rights.  In other words, there is no indication that these vaguely identified events resulted in Plaintiff's own inability to attend religious services or, more importantly, interfered with his right to practice his religion.  Moreover, the short-term or sporadic denials identified here do not establish a constitutional violation.  To establish a free exercise

---

[4] Another declaration, the declaration of Inmate Farha, does not provide relevant evidentiary support for Plaintiff's claims against Defendant Cabrera. (Pl's Opp'n, Ex. H.)

violation, an inmate must demonstrate that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *See Shakur*, 514 F.3d at 883-85.  In order to be a substantial burden, the interference must be more than an isolated incident or short-term occurrence. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (holding correctional officer's "short-term and sporadic" interference with inmate's prayer activities did not constitute substantial burden on free exercise of religion).  Here, Plaintiff alleges that Defendant Cabrera only prevented him from attending Jumu'ah services one occasion by refusing to sign the release sheet.  UMF 42; Pl's Response to UMF 42 (Doc. 104, p. 13).  The Court therefore finds that Defendant Cabrera is entitled to summary judgment on Plaintiff's First Amendment claim.  Plaintiff has failed to raise a genuine dispute of material fact.

## V.    Conclusion and Recommendation

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.  As the Court finds no constitutional violation, it is unnecessary to reach Defendants' alternate argument that they are entitled to qualified immunity.  For the reasons stated, IT IS HEREBY RECOMMENDED that:

1.   Plaintiff's motion to file out of calendar discovery, filed on November 17, 2014, be DENIED;

2.   Plaintiff's surreply and request for judicial notice, filed on June 8, 2015, be STRICKEN from the record;

3.   Defendants' motion for summary judgment, filed on October 3, 2014, be GRANTED; and

4.   Judgment be entered in favor of Defendants Hedgpeth, Cabrera, Flores, Lewis and Wegman.

///
///
///
///
///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 4, 2015**          /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE

21